United States District
Nothern District of New York

Prisoner's Complaint under Civil Rights Act, 42 U.S.C § 1983
## 1. Caption of Action



A. Plaintiff: Julio Nova # 02-A-2345

B. Defendants:

9:19-cv-72

1. Deputy of Security Paul Woodruff, Individual and Official Capacity
2. Sergeant Randal Smith, Individual and Official Capacity
3. Correction Officer Jamie Willett, Individual and Official Capacity

## 2. Statement of Jurisdiction

This is a civil action seeking relief and damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C §§ 1981, 1983 and 1985. The Court has jurisdiction over the action pursuant to 28 U.S.C §§ 1331, 1343(3), 1391, 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, which relate to declaratory judgment.

## 3. Parties to this Action

Plaintiff's Information:

Julio Nova #02-A-2345, Upstate correctional Facility, Bare Hill Road, P.O Box 2001, Malone, NY 12953

Defendant's Information:

Woodruff, Dept. Superintendent, sued in individual and Official Capacity. Upstate corr. Fac., Bare Hill Road, P.O Box 2001, Malone, NewYork 12953

Smith, Sergeant, sued in individual and Official Capacity. Upstate corr. Fac., Bare Hill Road, P.O Box 2001, Malone, New York 12953.

Willett, Correction's Officer, sued in individual and Official Capacity. Upstate corr. Fac., Bare Hill Road, P.O Box 2001 Malone, New York 12953

## 4. Previous Lawsuits In State And Federal Court

A. No, I have not begun any other lawsuits in state or Federal court.

B. No, I have not begun any other lawsuits relate to my imprisoment.

## 5. Nature of the Action

This civil action, pursuant to 42 U.S.C §1981, 1983, and 1985 Seeking monetary damages for declaratory and injuctive relief for the malicious assault, racial descrimination and conspiracy to beat plaintiff in a retaliation fashion.

That on March 1, 2018, in the Nothern District of New York, Woodruff, Smith and willet, the defendants, under color of law, stature, ordinance, regulation, and custom, willfully subjected plaintiff in a state, to wit, the state of New York, to the deprivation of a right, privilege, and immunity secured and protected by the constitutions and laws of the united states, to wit, the right to be free from excessive use of force, which deprivation resulted in bodily injury to plaintiff, to wit, while working for the Department of correctional Services, upstate corr. Fac., County of Franklin, Woodruff, Smith and willet conspired to beat and cover up the beating while plaintiff was restrained.

On or about March 15, 2018, the defendants knowingly altered, destroyed, mutilated, concealed, cover up, falsified and made false entry in record, document, and tangible object with intent to conspire, impede, obstruct and influence proper administration of a matter

6. Allegations Common to All Causes of Action

Plaintiff, Julio Nova, 39 years of age is a convict in the New York State Department of correction (hereafter as docs)

Officer J. Willett, maliciously assaulted plaintiff and used excessive force, without any provocation.

Officer Sergeant R. Smith conspired to have plaintiff beat-up, thus, Smith to cover up so that it would appear that the use of force against plaintiff was warranted

Superintendent P. Woodruff conspired to cover up, falsified, and made a false entry in a record, document and tangible object with the intent to impede, obstruct and influence the investigation.

## 7. The Scene of the Assault

The upstate Correctional Facility, in the County of Franklin, houses, among other inmates, inmates in need of maximum security. It is separated into multiple block areas, including but not limited to blocks; 8, 9, 10, 11 and 12 buildings.

In March 1, 2018, building 9 was a punitive Segregation, in which inmates were generally kept in Solitary confinement in individual and double bunks Cells that were locked for approximately 23-hours per day. The Cell's doors contained slots or ports at approximately waist level, through which inmates Could present their hands to be Cuffed or uncuffed (The "Cuffing port"). Inmates were brought to medical, dental ect, in handcuffs attached to chain leveled at waist area. After inmates were seen at medical, they were similarly placed in their cell.

Building-9 consist of two tiers: a lower tier and upper tier. The upper and lower tiers were accessible by a flight of steps. In the center was located "the bubble", the center for A, B and C units within building-9, which is lined with windows facing

into all units and the hallway outside the cells. At all times relevant to this complaint, the upper and lower tiers each contained 25 cells, which generally remained locked.

The controls that unlock the doors leading from the units in building-9 into an exterior hallway and the rest of building-9 are located in the bubble, which is staffed at all times by a correctional officer. Accordingly, individuals entering or exiting building-9 would need to sign a log once allowed (or "buzzed") in by the correction officer in the bubble.

There are surveillance cameras throughout the entire facility, including in all units hallway.

## 8. Assault on Plaintiff

1. The events described in this complaint were captured on videotape by multiple surveillance cameras. One of these cameras includes a handheld camcorder.

2. On March 1, 2018 at approximately 8:30 a.m., plaintiff was told to pack all his property, after allegedly have altered given shaving razor. (Moved from upper tier to lower tier).

3. Approximately an hour later, while plaintiff was being moved by correction officers Mr. A. Bean and his partner W. Constock II, plaintiff noticed he was about to be moved in a cell which is to be known, by or among inmates and guards, to be kept with its toilet and sink purposelly damaged.

4. Immediately upon reaching the down tier, plaintiff requested to speak to a Sergeant.

5. Moments later a sergeant and several other officers approched the plaintiff, at that point the two officers whom were escorting him got furious and aggressively manhandled the plaintiff.

6. The officers, Bean and Comstock, began forcing plaintiff into new assigned cell. At the same time numerous of other officers begun also to use force.

7. Immediately after entering cell, without warning, an officer punched plaintiff in the back of head repeately, then on the side of face in a position standing behind plaintiff. At such time plaintiff was not making any aggressive movements.

8. At all time during the incident plaintiff was handcuffed attached to waist chain. Whithout pause, officer U. Willet punched plaintiff a first time, second time, and then a third. The second and third punches pushed plaintiff further back into the cell, and the momentum of the punches carried Willet into the cell as well.

9. Once in the cell, Willet degraded plaintiff with racial slur while recklessly throwing punches.

10. The assault by Willett lasted approximately 10 seconds.

11. It is significant to note, that while in the cell plaintiff attempted to verbally confront Willett, as a result Saliva from plaintiff mouth landed upon Willett's mouth. Plaintiff did not intentionally spit at CO Willett.

12. The video footage will show that, immediately cell door was shut plaintiff's handcuffs were intentionally pulled through Cuffin port by, intentionally over doing it, Willett, causing injury upon right hand of plaintiff.

13. Approximately two (2) hours -- plaintiff was taken to facility hospital for x-rays on right hand.

14. It is significant to note, that the entire trip into hospital was recorded by an officer who escorted plaintiff by handheld camcorder.

9-of-26

15. On the way to the hospital plaintiff saw willet who then made serious threats by stating "you are just like my wife, I'ma fucking kill you for spitting on me". Minutes after threat, plaintiff explained to sergeant smith, who was present when plaintiff was threatened and through the entire trip to hospital, the risk to his personal security. Smith then told plaintiff "what do you expect after spitting at one of my officers".

16. On the way back from hospital, plaintiff saw willett, once again, waiting for him and quickly made threatening gesture.

17. It is significant to note, that while plaintiff was awaiting for the officer in the bubble to buzz-us in the unit -- he witnessed sergeant smith engaged in a conversation where he told willet "don't worry I will take care of it, it has to be done right".

18. Immediately plaintiff was about to enter his cell, but he quickly noticed that his property had been intentionally violated, and that

it appeared as some softa substance had been poured upon property.

19. Plaintiff later learned that feces was poured upon his property by C.O Bean.

20. Plaintiff was forced into cell and fixed cameras shows Sergeant Smith joggin out the unit, and seconds later returning along officer Willett and Bean.

21. It is significant to note, that the second, plaintiff, was placed within cell, plaintiff knew what was about to happen when he heard Willett shouted "where is that nigger, what I told you ah?." he then ruthlessly attacked plaintiff.

22. Officer Willett repeatedly pounched ff and kick plaintiff's head, shouting in substance: "Don't you ever do that to a corrections officer again".

23. It is significant to note, that Sgt. Smith was present the entire time plaintiff was being assaulted by Willet and others. Throught-out the assault Sgt. Smith repeatedly shouted: "Stop reaisting!" even though plaintiff was handcuffed and subdued.

24. Correction officers placed plaintiff in apprehension of being assaulted, with the intent to cause serious physical injury to plaintiff, they caused such injury; and recklessly caused physical injury, thus constituing excessive force depriving him of liberty without due process of law, which includes the right to be free from excessive force accounting to punishment by one acting under color of law.

25. Willet, and others, willfully struck, kicked, stomped and otherwise assaulted plaintiff while he was restrained and under the physical control of another correction officer.

26. Plaintiff knew what was coming. That he was about to get jumped, the reason why plaintiff asked Smith to please do something, to protect him, but instead defendant conspired to retaliate against plaintiff.

27. On March 1, 2018, plaintiff did not assault and/or batter the defendant officer.

28. On March 1, 2018, plaintiff did not threaten nor provoked defendants.

29. On March 1, 2018, plaintiff did not provoke the defendant officer in any manner that justified the use of force deployed against him.

30. On March 1, 2018, moments before the assault, plaintiff requested that defendant Smith provide aid to plaintiff in order to prevent the imminent attack.

31. On March 1, 2018, plaintiff did not engage in any activity that caused the defendant to believe that he was going to cause him injury.

32. The force initiated and utilized by the defendant was excessive, unreasonable and caused plaintiff serious injury.

33. The force utilized by the defendant was reckless, willfull, and utterly disregarded the rights and safety of the plaintiff. This conduct was performed deliberately, with oppression, maliciously and sadistically to cause harm and pain so as to indicate a wanton disregard for the plaintiff rights.

34. The conduct of defendants proximately caused plaintiff's injuries

35. As a result of the conduct of the defendants, plaintiff suffered pain and anguish prior to during, and after the incident.

## 9. The Cover-up of the Assault on Plaintiff

The plaintiff is aware that NYSDOCCS promulgate written Directives ("the Use of Force Directives") Concerning when the use of force against inmates by correction officers is appropriate, and trains each New York State correction officers on these guidelines. Among other things, the use of force Directives prohibit (1) the use of more force than is necessary to restrain an inmate, control a situation, or protect oneself or others, (2) the use of force of more force out of proportion to the threat posed by an inmate at the time, (3) the use of blows where a control hold, grasping, or pushing would suffice to restrain the inmate, (4) the direction of blows is otherwise avoidable, and (5) multiple strikes, punches, or kicks where a single blow would be sufficient to stop an inmate's attack. According to the use of force Directives, force is to be used as a last resort, when an inmate in restraints is still dangerous to himself and others.

15-9-26

I have reviewed a "Use of Force" form filled out by defendants and dated March 1, 2018. I am aware that officers involved in uses of force, along with officers who witness uses of force, are instructed to fill out such forms by the end of the tour during which the use of force took place. I have learned from NYsDOCCS documents that defendants Use of Force form may not have been completed until the next day, even though it was dated March 1, 2018. I believe that defendants Use of Force form contains various statements that ar contrary to the events as captured on video surveillance and as recouted in a disciplinary hearing conducted on March 15, 2018 by Captain Dominic of the Upstate Corr. Fac.

That when Willett enter the cell, Willett grabbed a hold of plaintiff "in an escort hold" and began to take him down upon floor while at same time lowering and twisting his body to face Willett, and then suddenly began spitting upon plaintiff's face seemingly without provocation. The handheld camcorder shows the entire beating.

In addition in contract to all "use of force" form account, willetts testimony at disciplinary hearing, including Sgt. Smith testimony, were contradicting one another.

Upon information and believe, Dept. Superintendent P. Woodruff conspired to falsified, destroy, and made a false entry in a record. Mr Woodruff destroyed documents from a second hearing, which he himself conducted on March 15, 2018.

## 10. Nature of this case

The incidents on which plaintiff's lawsuit is based occurred as a result of the officer's unreasonable actions. The defendants conduct was malicious, deliberate indifference, deliberate intentional, and well calculated, as named and/or described above, before, during and after the "Retaliation", assault and excessive use of force. Therefore, defendants have earned punitive damages

17-QS-26

## 11. The Nature of Plaintiff's Injuries And Damages

As a direct and proximate consequence of the aforementioned actions by the defendants, Plaintiff Nova:

(a) was physically and verbally assaulted, intimidated, terrorized and harassed by guards;

(b) was subjected to degrating, dehumanizing and emotionally destructive conditions

(c) Suffer phisicall irreparable injury; carpal tunel;

(d) Pain and suffering, emotional distress and deep depression attributable to official misconduct and its effect on himsel and members of his family;

(e) was shamed, disgraced, ridiculed and humiliated.

## 12. Causes of Action

### First Cause of Action
[ 42 U.S.C § 1983 Defendant Willett
Excessive Force -- Serious Injury]

The use of force by defendant Willett,
without provocation and totally without penoligical
justification constitutes an excessive use of
force in violation of Federal constitution. The
conduct of defendant Willett proximately caused
plaintiff injuries. The use of force applied was
maliciously and sadistically for the sole purpose
of causing plaintiff harm

### Second Cause of Action
[ 42 U.S.C § 1983 Defendants Smith
and Woodruff -- Failure to Train or Supervise]

By virtue of the foregoing defendants Smith
and Woodruff are liable to plaintiff resultant damages,
because of their careless, negligent, reckless and/or
deliberate failure, or deliberate indifference to the need,
to properly train, discipline and supervise their agents,
servants and/or employees with regard to their aforementioned
duties.

19-05-26

Third Cause of Action
[ 42 U.S.C § 1983; Defendant Smith
Failure to Intervene, Failure to Protect ]


Defendant Smith had an affirmative duty
to intervene on behalf of plaintiff, whose rights
were being violated or about to be violated by
defendant Willett. the defendants' conduct proximately
caused the plaintiff physical injury, pain and
suffering before, during, and after the assault.
Defendant exhibited deliberate indifference to plaintiff's
rights by failing to act on information indicating
that acts of constitutional dimensions were occur-
ring or about to occur.


Fourth Cause of Action
[ 42 U.S.C § 1981 and 1985; All Defendants
Racial Descrimination and conspiracy ]


Defendants and others conspired in acted in
concert, and/or aided and abetted each other, in de-
priving, or attempting to deprive, plaintiff of the
equal protection of the law, and equal privileges
and immunities under the law. In furtherance of
the object of this conspiracy, Defendants and others

maliciously knowingly altered, destroyed, mutilated, concealed, cover up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, conspire, obstruct, and influence the investigation and proper administration of a matter and subjected plaintiff to ridicule and disparaging ethnic comments including, but not limited to, in words or in substance, defendant Willett's comment "Where is that Nigger" upon information and belief, defendants' actions in furtherence of the aforesaid conspiracy were motivated by racial, ethnic ect. By reason of the foregoing, Defendants, and others presently unknown to plaintiff, deprived plaintiff of the equal protection of the law, and of equal privileges and immunities under the law.

Pursuant to the conspiracy, the conspirators, agents and servants, intentionally, recklessly, negligently, and/or with deliberate indifference to the rights of plaintiff.

(a) made false statements at disciplinary hearing with the intention of causing the wrongful confinement of plaintiff.

(b) improperly caused ofthe correction officers to give untruthful, erroneous, incomplete and/or misleading statements and testimony against plaintiff.

(c) witheld from, or substantially delayed disclosure to, Attorney General and or plaintiff, evidence favorable to the plaintiff on the issue of assault.

(d) discriminated against plaintiff, an Dominican-American, on the basis of his ethnic background, all which, considered individually as well as collectively, were the direct and proximate cause of plaintiff assault.

The aforesaid conduct of defendants, and others presently unknown to plaintiff, operated, inter alia, to deprive plaintiff of important and well-established rights under the constitution and the laws of the United States including, but not limited to, his rights

(a) to be free of excessive or unreasonable punitive segregated confinement.

(b) Not to be deprived of his liberty or property without due process

(c) to timely disclosure of all evidence favorable to the plaintiff on the issue of assault.

The foregoing violations of plaintiff's rights constituted constitutional torts and were effected by actions taken under color of federal law, and within the scope of authority

By the foregoing, defendants, and others presently unknown to plaintiff are liable to plaintiff, pursuant to 42 U.S.C §§ 1981 and 1985.

## 13. Prayer For Relief

Plaintiff will suffer irreparable injury and are threatened with continuing future injury by defendants Smith, Woodruff and willett hinding their access from plaintiff, for reason of the acts complained of herein, and have no adequate remedy at law.

WHEREFORE, plaintiff demands on behalf of himself, that this Honorable Court:

1. Enter a declaratory judgement, pursuant to 28 U.S.C.A § 2201, declaring an attachment on defendants Woodruff, Smith and Willett "HOME"

2. Enter a declaratory judgment, pursuant to 28 U.S.C.A § 2201, declaring an attachment on defendants Woodruff, Smith and Willett "CAR"

3. Enter a declaratory judgment, pursuant to 28 U.S.C.A § 2201, declaring an attachment on defendants Woodruff, Smith and Willett "BANK ACCOUNT"

4. Issue preliminary and permanent injunction against these defendant (Woodruff, Smith and Willett) there successor or estate, agents and employees and all other persons in active concert with them to cover-up their access, enjoining the rights stated herein of, unless and until:

(a) Plaintiff have established a written standards and criteria are promulgated for determining the propriety and procedure for carrying out the effectuation of securing this lien.

All remedies for the issues contained heretofore had been properly administratively exhausted through the grievance process and Attorney General. However the defendants' own Directive 4040 states that it is not available for monetary Damages.

## 14. Jury Trial Demand

Plaintiff demands trial by jury of all issues in this action.

WHEREFORE, plaintiff demands judgment against defendants as follow:

A. That a judgment be entered against this defendants;

B. That plaintiff be awarded the statutory maximum damages ($250,000.00) in their individual capacity, along with attorney's fees and costs incurred in bringing this action;

C. Plaintiff request this Court to assess compensatory and consequential damages against these defendants, jointly and severally, in the amount of $1,000,000.00;

D. In order to deter defendants from such action in the future, plaintiff further request punitive damages against these defendants in the amount of 200,000.00;

E. Attorney fees incurred herein against this defendants; and

F. Such other additional relief as the Court may deem just and proper, equitable

### 28 U.S.C. § 1746

I declare under the penalty of perjury that the fore-going is true and correct.

Dated: January 14, 2019
        Franklin County

Julio Nova #02-A-2345
Upstate Correctional Facility
Bare Hill Road, P.O Box 2001
Malone, New York 12953

26-of-26