UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JULIO NOVA,

                                        Plaintiff,

        v.                                                          9:19-CV-0072
                                                                    (GTS/TWD)

RANDAL SMITH; et. al.,

                                        Defendants.

---

APPEARANCES:

JULIO NOVA
02-A-2345
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

        On or about January 22, 2019, pro se plaintiff Julio Nova ("plaintiff") commenced this

action by filing a complaint, accompanied by an application to proceed in the action in forma

pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Appl.").  The Clerk has forwarded

those two documents to the Court for review.

1

## II.     IFP APPLICATION

Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[1]  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application that demonstrates economic need.  IFP Appl.; *see* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the Inmate Authorization Form required in this District.  Dkt. No. 3.  Accordingly, plaintiff's IFP Application is granted.

## III.     SUFFICIENCY OF THE COMPLAINT

### A.     Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code ("Section 1915") directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

---

[1]  Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  PACER Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited Feb. 14, 2019).  Based on that review, it does not appear that plaintiff has acquired three strikes for purposes of Section 1915(g).

such relief." 28 U.S.C. § 1915(e)(2)(B).[2]  Thus, even if a plaintiff satisfies the financial criteria

to commence an action IFP, it is the court's responsibility to determine whether the plaintiff

may properly maintain the complaint that he filed in this District before the Court may permit

him to proceed with the action IFP.  *See id.*

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any

"complaint in a civil action in which a prisoner seeks redress from a governmental entity or

officer or employee of a governmental entity" and must "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a

defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171

F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil

complaints brought by prisoners against governmental officials or entities regardless of

whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening

prisoner's complaints).

In reviewing a pro se litigant's complaint, the Court has a duty to liberally construe the

pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should

exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before*

the adverse party has been served and both parties (but particularly the plaintiff) have had an

opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).  Therefore, a

court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to

---

[2]  A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the

Court should construe the factual allegations in the light most favorable to the plaintiff, "the

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled

to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only

"tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal

quotation marks and alterations omitted).

      **B.**     **Summary of the Complaint**

      Plaintiff's complaint alleges wrongdoing that occurred while he was in the custody of

the New York State Department of Corrections and Community Supervision ("DOCCS") and

confined in Upstate Correctional Facility ("Upstate C.F.").  Compl. at 3.  The following facts

are set forth as alleged by plaintiff in his complaint.

      On March 1, 2018, plaintiff was transferred  from one cell to another within the same

building by Corrections Officers ("C.O.") Bean and Constock, who are not named as

defendants.  Compl. at 7.  Plaintiff's new cell was known by inmates and corrections staff to

have a purposely damaged sink and toilet.  *Id.*  Upon arriving at the new cell, and before entering the cell, plaintiff requested to speak to a sergeant.  *Id.*  When the sergeant arrived, C.O. Bean and Constock began to "aggressively manhandle[]" plaintiff and forced him inside the cell.  *Id.* at 7-8.  Upon entering the cell, and while plaintiff was still handcuffed and restrained in a waist chain, an unidentified "officer punched plaintiff in the back of the head repeatedly, then on the side of the face."  *Id.* at 8.  Defendant C.O. Willett then punched plaintiff three times and directed a racial slur at plaintiff.  *Id.*  Plaintiff denies spitting on defendant Willett during the ten-second assault.  *Id.* at 9.  Once plaintiff was secured in the cell, defendant Willett aggressively pulled plaintiff's handcuffed hands through the handcuff port, injuring plaintiff's right hand.  *Id.*

Two hours later, plaintiff was escorted to the Upstate C.F. hospital for x-rays of his hand.  Compl. at 9.  The escort was recorded on videotape.  *Id.* at 6, 9, 16.  During the escort plaintiff again encountered defendant Willett, who threatened to kill plaintiff.  *Id.* at 10.  Defendant Sergeant Randal Smith witnessed defendant Willett's threat.  *Id.*  Plaintiff overheard defendant Smith tell defendant Willett, "'[D]on't worry I will take care of it.  It has to be done right.'"  *Id.*

Upon arriving back to his cell, plaintiff heard defendant Willett yell another racial slur at plaintiff, and immediately thereafter defendant Williett assaulted plaintiff again by kicking and punching him.  Compl. at 11.  Defendant Smith was present for and witnessed this assault.  *Id.* at 12.  Just before the assault occurred, plaintiff "asked [defendant] Smith to please do something[] to protect him, but in[s]tead defendant [Smith] conspired to retaliate against plaintiff."  *Id.* at 13.  At no time during the two assaults by defendant Willett on March 1, 2018, did plaintiff assault, threaten, or provoke defendant Willett.  *Id.*

On or about March 1, 2018, a use-of-force incident report was generated "by defendants" concerning the assaults on plaintiff.  Compl. at 16.  The report "contains various statements that ar[e] contrary to the events" that actually occurred on that date.  *Id.*  On March 15, 2018, a disciplinary hearing was conducted concerning the use-of-force incidents.  *Id.*  Defendants Willett and Smith both testified at the disciplinary hearing.  *Id.* at 17.  Their testimonies were not consistent with one another.  *Id.*

Defendant Deputy Superintendent Paul Woodruff "conspired to falsif[y], destroy, and made a false entry in a record."  Compl. at 17.  Defendant Woodruff also "destroyed documents from a second hearing, which he himself conducted on March 15, 2018."  *Id.*

Liberally construed, plaintiff's complaint asserts excessive force, conspiracy, and equal protection claims against defendants.  Compl. at 19-23.

### C.    Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

### 1.  Excessive Force, Failure to Intervene – Defendants Willett and Smith

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to plaintiff's complaint to the extent it asserts Eighth

6

Amendment excessive force and failure to intervene claims against defendants Willett and Smith with respect to the use-of-force allegations from March 1, 2018.  In so ruling, the Court expresses no opinion as to whether plaintiff's complaint can withstand a properly filed dispositive motion with respect to these claims.

### 2. Equal Protection and Conspiracy – Defendants Willett, Smith, and Woodruff

### a. 42 U.S.C. § 1985

Plaintiff's complaint asserts a claim of conspiracy to violate his equal protection rights pursuant to 42 U.S.C. § 1985 ("Section 1985") against all of the defendants.  Compl. at 20-23.  In relevant part, Section 1985 prohibits "two or more persons . . . [from] depriving, either directly or indirectly, any person . . . of the equal protection of the laws[.]"  42 U.S.C. § 1985(3); *United Bhd. of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).  "To state a cause of action under [Section] 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999).  In addition, a complaint asserting a Section 1985(3) claim "must [allege] some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiff's complaint conclusorily alleges that defendants Willett, Smith, and Woodruff conspired under Section 1985.  Other than plaintiff's repeated conclusory contention that the

defendants "conspired," there are no allegations to suggest that defendants were "committed to a common goal" or otherwise agreed among themselves to deprive plaintiff of equal protection under the law. *Tavolini v. Mt. Sinai Med. Ctr.*, 984 F. Supp. 196, 205 (S.D.N.Y. 1997). Moreover, although it is alleged that defendant Willett directed a racial slur at plaintiff before assaulting him for the second time on March 1, 2018, there are no allegations in the complaint that defendant Smith's or defendant Woodruff's conduct was motivated in any way by plaintiff's race. Accordingly, because there are no allegations in the complaint plausibly suggesting that the three defendants acted in concert to deprive plaintiff of any constitutional rights, his Section 1985 claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Fourteenth Amendment Equal Protection

Liberally construed, plaintiff's complaint could be construed as asserting stand-alone claims arising under the Equal Protection Clause under the Fourteenth Amendment. That provision requires the government to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). To state a viable claim for denial of equal protection, a complaint must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). In the alternative, under a "class of one" theory,

8

a complaint must allege that the plaintiff has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291-92 (2d Cir. 2013).

Plaintiff's complaint is devoid of any allegation that defendants intentionally discriminated against a suspect class of people. Accordingly, the Court has construed the complaint as asserting an equal protection claim based on a class-of-one theory of liability.

As discussed above, the complaint contains no allegations that defendants Smith and Woodruff acted with any racial animus towards plaintiff. For that reason, plaintiff's equal protection claims asserted against defendants Smith and Woodruff are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

As for plaintiff's equal protection claim asserted against defendant Willett, the complaint alleges that defendant Willett directed a racial slur towards him immediately before or during the two assaults on March 1, 2018. Compl. at 8, 11. Mindful of the obligation to liberally construe a pro se litigant's pleadings, the Court will require defendant Willett to respond to plaintiff's equal protection claim. *See, e.g., Cole v. Fischer*, 379 F. App'x 40, 42-43 (2d Cir. 2010) (reversing the district court's dismissal of the plaintiff's Fourteenth Amendment claim because the plaintiff's "amended complaint alleged that [the defendant] became physically abusive and hit [the] plaintiff in the face while using racial epithets and referring to [the] plaintiff's religion"); *Ali v. Connick*, 136 F. Supp. 3d 270, 278-80 (E.D.N.Y. 2015) (denying the defendants' motion for summary judgment with respect to the plaintiff's equal protection claim because there was evidence in the record that the defendant directed

9

racial slurs at the plaintiff during an assault)*; Vilkhu v. City of N.Y.*, No. 06-CV-2095, 2008 WL 1991099, at *5 (E.D.N.Y. May 5, 2008) (denying the defendants' summary judgment motion concerning the plaintiff's equal protection claim because the plaintiff alleged that "racial epithets were directed at him while he was being physically assaulted by the defendants"); *Baskerville v. Goord*, No. 97-CV-6413, 1998 WL 778396, at *7-8 (S.D.N.Y. Nov. 5, 1998) (concluding that, where racial slurs or epithets "are shown to be connected with physical injury, a [Section] 1983 claim may indeed lie").

### c. 42 U.S.C. § 1981

Plaintiff's complaint also invokes 42 U.S.C. § 1981 "Section 1981") as a source of his "racial discrimination and conspiracy" claims. Compl. at 20. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). To state a cognizable claim under Section 1981, a complaint must "allege facts supporting the following elements: (1) plaintiff[ is] a member[] of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000).

Plaintiff's Section 1981 claims asserted against defendants Smith and Woodruff fail because, as discussed above, the complaint fails to plausibly allege that either of them discriminated against him on the basis of race. As for defendant Willett, however, liberally construing the complaint, the Court finds that defendant Willett should be made to respond to plaintiff's Section 1981 claim. *See, e.g., Vilkhu*, 2008 WL 1991099, at *5.

### 3.  "Failure to Train or Supervise" – Defendants Smith and Woodruff

The "Second Cause of Action" asserted in the complaint purports to assert claims

against defendants Smith and Woodruff based on their capacities as supervisors and their

failure "to properly train, discipline and supervise their agents, servants and/or employees."

Compl. at 19.  While "the doctrine of respondeat superior . . . does not suffice to impose

liability for damages under section 1983 on a defendant acting in a supervisory capacity,"

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003), the Second Circuit has set

forth five circumstances under which a supervisor may be considered personally involved in a

constitutional violation.[3]  In particular, a supervisor may be found personally involved if s/he

(1) directly participated in the violation, (2) failed to remedy that violation after learning of it

through a report or appeal, (3) created, or allowed to continue, a policy or custom under

which the violation occurred, (4) had been grossly negligent in managing subordinates who

caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing

to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d

865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[4]

---

[3]  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

[4]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)).  Absent any authority to the contrary, the Court has applied *Colon* in this case.

In light of the allegations supporting plaintiff's Second Cause of Action, the Court has considered whether the complaint plausibly alleges that defendants Smith or Woodruff were grossly negligent in managing defendant Willett under the fourth *Colon* factor.  The allegations concerning defendant Smith center around his specific, direct involvement in the assault on plaintiff by defendant Willett insofar as defendant Smith failed to intervene and protect plaintiff.  Compl. at 12.  With respect to defendant Woodruff, the complaint only alleges that he "conspired to falsif[y], destroy, and made a false entry in a record," and that he "destroyed documents from a second [disciplinary] hearing, which he himself conducted[.]" *Id.* at 17.  Accordingly, the allegations in the complaint that specifically implicate defendants Smith and Woodruff do not support either a negligent or failure-to-train theory of liability. Moreover, the allegations describing the "Second Cause of Action" as asserted against defendants Smith and Woodruff are set forth only in conclusory terms, alleging that those individuals were negligent in their training and disciplining of "their agents, servants and/or employees."  *Id.* at 19.  Such vague and conclusory allegations do not support a plausible supervisor liability claim against defendants Smith and Woodruff.  Accordingly, plaintiff's Second Cause of Action purporting to assert a failure-to-train claim against defendants Smith and Woodruff is dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**.[5]  The Clerk shall provide the superintendent of the facility in which plaintiff is currently housed with a copy of plaintiff's Inmate Authorization Form (Dkt. No. 3) and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[6] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's Inmate Authorization Form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **ACCEPTED for filing**; and it is further

**ORDERED** that the following claims asserted in the complaint require a response: (1) Eighth Amendment excessive force and failure to intervene claims asserted against defendants Willett and Smith; (2) Fourteenth Amendment equal protection claim asserted against defendant Willett; and (3) Section 1981 claim asserted against defendant Willett; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice**: (1) Section 1985 claims asserted against defendants Willett, Smith, and Woodruff; (2) Fourteenth Amendment equal protection claims asserted against defendants Smith and Woodruff; (3)

---

[5]  Plaintiff should note that, although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[6]  While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1.

Section 1981 claims asserted against defendants Smith and Woodruff; and (4) failure to train/supervisor liability claims asserted against defendants Smith and Woodruff; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Smith and Willett. The Clerk shall forward a copy of the summonses and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint shall be filed by defendants Willett and Smith or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions.  Motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

Dated:        February 27, 2019
              Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

15