UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIO NOVA,

                                        Plaintiff,

        v.                                                      9:19-CV-0072
                                                                (GTS/TWD)

RANDAL SMITH, et al.,

                                        Defendants.
_____

APPEARANCES:

JULIO NOVA
Plaintiff, pro se
02-A-2345
Attica Correctional Facility
Box 149
Attica, NY 14011

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.        INTRODUCTION

        Pro se plaintiff Julio Nova ("plaintiff"), a New York State inmate, commenced this

action on or about January 22, 2019, with the filing of a complaint, accompanied by an

application to proceed in the action in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No.

2.  Following review of the complaint and IFP application pursuant to 28 U.S.C. §§ 1915 and

1915A, the Court issued a Decision and Order on February 27, 2019, granting plaintiff's IFP

application and accepting the original complaint for filing insofar as it asserted (1) Eighth

Amendment excessive force and failure to intervene claims against defendants Correctional

Officer ("C.O.") Jamie Willett and Sergeant Randal Smith; (2) a Fourteenth Amendment equal

protection claim against defendant Willett; and (3) a claim arising under 42 U.S.C. § 1981 ("Section 1981") against defendant Willett. Dkt. No. 4 ("February Order"). The Court dismissed the remainder of the claims asserted in the original complaint without prejudice. *Id.* Plaintiff availed himself of the opportunity to amend his pleading, and the Court received plaintiff's amended complaint on or about March 20, 2019. Dkt. No. 7 ("Am. Compl."). Since that date, the Court has received the following motions from plaintiff: (1) a motion for a preliminary injunction, Dkt. Nos. 15, 18 ("PI Mtn."); (2) a motion to supplement the amended complaint, Dkt. No. 16 ("Suppl. Pleading"); (3) a motion for the appointment of pro bono counsel, Dkt. No. 17 ("Counsel Mtn."); and (4) a second motion to supplement the amended complaint, Dkt. No. 22 ("Second Suppl. Pleading"). Defendants Willett and Smith have responded in opposition to plaintiff's motions for preliminary injunction and to amend and supplement the amended complaint. Dkt. Nos. 23, 28. On June 7, 2019, the Court received plaintiff's reply to his motions to amend and supplement the amended complaint. Dkt. No. 36.

The Clerk of the Court has forwarded plaintiff's amended complaint to the Court for review pursuant to 28 U.S.C. §§ 1915 and 1915A. Plaintiff's motion for a preliminary injunction, motion for counsel, and two motions to supplement the amended complaint are also currently pending before the Court. For the reasons set forth below, plaintiff's motions to supplement the amended complaint are granted; the amended complaint is accepted for filing; plaintiff's motion for a preliminary injunction is denied; and his motion for the appointment of counsel is denied.

## II. DISCUSSION

### A. Plaintiff's Amended Complaint and Supplemental Pleadings

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 and 1915A was discussed at length in the February Order and will not be restated in this Decision and Order. *See* February Order at 2-4. Because plaintiff's amended complaint was filed as of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and in light of plaintiff's pro se status and the early stage of this litigation, plaintiff's motions to supplement the amended complaint are granted. Accordingly, the Court has considered the sufficiency of plaintiff's amended complaint and the two supplemental pleadings together.[1] Am. Compl.; Suppl. Pleading; Second Suppl. Pleading.

Generally, plaintiff's amended complaint realleges the facts included in the original complaint. *Compare* Compl. *with* Am. Compl. In particular, with respect to the use of force incidents on March 1, 2018, involving defendants Willett and Smith, the allegations in the amended complaint are nearly identical. *Id.* Accordingly, the excessive force, failure to intervene, equal protection, and Section 1981 claims that survived the Court's initial review of plaintiff's original complaint also survive the Court's review of plaintiff's amended complaint, and defendants Willett and Smith shall be directed to respond to those claims.

Plaintiff's amended complaint asserts several new claims not previously included in the original complaint. In addition to defendants Willett and Smith, the amended complaint also includes claims asserted against defendant Upstate Correctional Facility ("Upstate C.F.") Superintendent Paul Woodruff, defendant C.O. John Doe #1, and defendant "Clinic

---

[1] The Clerk of the Court is respectfully directed to attach to the amended complaint (Dkt. No. 7) plaintiff's first and second supplemental pleadings (Dkt. Nos. 16-1, 22).

Physician, Ms. John Doe #2."  Am. Compl. at 1.  The Court will discuss each of the newly asserted claims below.

## 1. Spoliation of Evidence / Access to the Courts

With respect to defendant Woodruff, the amended complaint alleges that he failed to preserve the records generated by the disciplinary hearing over which he presided on March 15, 2018.  Am. Compl. at 18-20.  Similarly, plaintiff alleges that although defendant Doe #1 had a duty to operate the hand-held video recorder on March 1, 2018, when plaintiff was being escorted to and from the Upstate C.F. infirmary, defendant Doe #1 "forgot[] to turn [it] on."  *Id.* at 21.  Liberally construed, the complaint asserts a "spoliation of evidence" and/or access to the courts claim arising from these allegations.  *Id.* at 18-22, 30-31.  With due regard to plaintiff's pro se status, regardless of how the claims are characterized, they must be dismissed.

"Spoliation of evidence" arises from "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)).  "[T]o succeed on a spoliation claim, a plaintiff must establish that (1) the defendant was under an obligation to preserve the evidence, (2) the evidence was destroyed with a culpable state of mind, and (3) the evidence destroyed was relevant to the plaintiff's claim or defense."  *Zuk v. Onondaga Cnty.*, No. 09-CV-0272, 2011 WL 4344043, at *8 (N.D.N.Y. Sept. 14, 2011) (citing *DeMeo v. Kean*, 754 F. Supp. 2d 435, 447 (N.D.N.Y. 2010)).  The obligation to preserve evidence arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  *In re Terrorist*

4

*Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted).

Even assuming the allegations in the amended complaint are true, plaintiff's allegation that defendant Woodruff destroyed disciplinary hearing records is purely speculative and unsupported by any additional allegations. Moreover, there are no allegations to support plaintiff's conclusory contention that defendant Woodruff was under an obligation to preserve the hearing records. Accordingly, plaintiff's spoliation claim asserted against defendant Woodruff is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

With respect to defendant Doe #1, the amended complaint does not allege that he either destroyed or altered any evidence by forgetting to turn on the video recorder on March 1, 2018. In the absence of this allegation, the amended complaint fails to state a cognizable claim for spoliation of evidence and the claim is therefore dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff's access to the courts claims – arising from allegations that defendant Woodruff destroyed disciplinary hearing records and defendant Doe #1 forgot to turn on the video recorder on March 1, 2018 – are also subject to dismissal. To state a cognizable First Amendment court-access claim, a complaint must allege that defendants' conduct "materially prejudiced a legal action [the plaintiff] sought to pursue" and that defendants acted deliberately and maliciously. *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1994) (Sotomayor, J.); *see also Lewis v. Casey*, 518 U.S. 343, 349-51 (1996). Plaintiff's amended complaint in this case does not allege sufficient facts plausibly suggesting that plaintiff suffered any real or imminent harm to a legal action he sought to pursue. In that regard,

plaintiff's allegations against defendants Woodruff and Doe #1 are fairly characterized as speculative. In addition, the amended complaint fails to allege that defendants Woodruff and Doe #1 acted deliberately and maliciously to interfere with any of plaintiff's legal claims. Accordingly, plaintiff's access to the courts claims asserted against defendants Woodruff and Doe #1 are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Negligent Infliction of Emotional Distress

Plaintiff asserts a New York State claim of negligent infliction of emotional distress ("NIED") against defendants Woodruff and Doe #1 based on the allegations that they failed to preserve or generate certain evidence, as discussed above in part II.A.1 of this Decision and Order. Dkt. No. 22 at 3. Under New York State law, to state a cognizable claim for NIED, a complaint must allege, inter alia, that the defendant's conduct "unreasonably endangers the plaintiff's physical safety." *De Rosa v. Stanley B. Michelman, P.C.*, 584 N.Y.S.2d 202, 203 (2d Dep't 1992); *accord, Fisk v. Letterman*, 424 F. Supp. 2d 670, 676 (S.D.N.Y. 2006). Because the amended complaint in this case does not allege that defendant Woodruff (by failing to preserve disciplinary hearing records) or defendant Doe #1 (by failing to turn on the video recorder during an assault by defendant Willett) placed plaintiff in any physical danger, plaintiff's NIED claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Retaliation

Plaintiff's amended complaint asserts retaliation claims against defendant Willett arising from allegations that defendant Willett (1) issued false misbehavior reports to plaintiff following the use of force incidents on March 1, 2018, and (2) "influenced other guards" to

6

harass plaintiff while he was confined in the SHU.  Am. Compl. at 12-13.

To state a cognizable First Amendment retaliation claim, a plaintiff's complaint must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Gill*, 389 F.3d at 380 (internal quotation marks omitted); *accord, Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  Courts must approach claims of retaliation "'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

In this case, even assuming for the sake of argument that plaintiff's amended complaint alleges sufficient facts to satisfy the second element of a retaliation claim, it fails to allege that plaintiff engaged in any protected activity and alleges no facts plausibly suggesting a causal connection between a constitutionally protected activity and defendant Willett's conduct.  Accordingly, plaintiff's retaliation claims asserted against defendant Willett are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Deliberate Medical Indifference

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components, one

objective and the other subjective. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The objective component of an Eighth Amendment deliberate indifference claim

"requires that the alleged deprivation must be sufficiently serious, in the sense that a

condition of urgency, one that may produce death, degeneration, or extreme pain exists."

*Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).  Under

the subjective element, medical mistreatment rises to the level of deliberate indifference only

when it "involves culpable recklessness, i.e., an act or a failure to  act . . . that evinces a

conscious disregard of a substantial risk of serious harm."  *Chance v. Armstrong*, 143 F.3d

698, 703 (2d Cir. 1998) (internal quotation marks omitted).

"Deliberate indifference requires more than negligence, but less than conduct

undertaken for the very purpose of causing harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d

Cir. 1994).  The inmate must demonstrate that the provider consciously and intentionally

disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. at 835-37; *see Blyden v.*

*Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (explaining, with respect to the subjective

element, a plaintiff must demonstrate that defendant had "the necessary level of culpability,

shown by actions characterized by 'wantonness'").  An "inadvertent failure to provide

adequate medical care" does not constitute "deliberate indifference."  *Estelle v. Gamble*, 429

U.S. 97, 105-06 (1976).

Plaintiff's amended complaint fails to allege sufficient facts to support a medical

indifference claim against defendant Doe #2.  The amended complaint alleges only that

plaintiff experiences "chronic pain" from carpal tunnel but otherwise does not include any

facts plausibly suggesting that the condition rises to the level of "urgent" or risks imminent

degeneration or death.  Am. Compl. at 17.  In addition, even assuming the amended

complaint alleges sufficient facts to satisfy the objective element of a deliberate medical indifference claim, it fails altogether to allege that defendant Doe #2 acted with the requisite deliberate indifference. In particular, plaintiff alleges that defendant Doe #2 "purposely deprived [him] of his appropriate medication due to his 'past history of drug abuse'" – an allegation that belies any suggestion that defendant Doe #2 denied plaintiff his preferred medicine out of deliberate indifference to a serious risk to plaintiff's health and safety. *Id.* at 18. Instead, this allegation suggests that defendant Doe #2 considered plaintiff's health and medical history in deciding what treatment to render to plaintiff. Furthermore, aside from plaintiff's conclusory allegation that defendant Doe #2 "acted with. . . reckless disregard to a known substantial risk of serious injury," *id.* at 17, there are no allegations in the amended complaint plausibly suggesting that defendant Doe #2 knew of a serious risk of harm to plaintiff and failed to provide adequate medical treatment despite that risk. Even liberally construed, the amended complaint alleges, at most, that plaintiff disagreed with defendant Doe #2's decision to deny him his preferred medicine, which "does not create a constitutional claim." *Chance*, 143 F.3d at 703. Accordingly, plaintiff's deliberate medical indifference claim asserted against defendant Doe #2 is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Use of Force Reports

The amended complaint alleges that the use of force reports generated by defendants following the use of force incidents on March 1, 2018, were not completed until 28 days after the incident occurred in violation of DOCCS regulations, and that the reports contradicted the "events as captured on videotape surveillance and as recounted at the disciplinary hearing." Am. Compl. at 27. These allegations, however, fail to give rise to a cognizable constitutional

9

claim.  A violation of state law or regulation does not, on its own, rise to the level of a

constitutional claim, *see, e.g., Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 548-49 (S.D.N.Y.

2016) (citing cases), and "[t]he principle that a prison inmate has no constitutional right to be

free from being falsely accused in a misbehavior report extends as well to false testimony by

corrections personnel at prison disciplinary hearings," *Collins v. Ferguson*, 804 F. Supp. 2d

134, 138 (W.D.N.Y 2011) (internal quotation marks and alteration omitted).  The procedural

safeguards to which a prison inmate is entitled in the context of a disciplinary hearing are well

defined as set forth in the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539

(1974), and they do not include any entitlement to prompt reporting or truthful testimony by

hearing witnesses.  *See Wolff*, 418 U.S. at 564-69.  Accordingly, plaintiff's claims arising out

of allegations that defendants violated state regulation and/or lied at a disciplinary hearing are

dismissed for failure to state a claim upon which relief may be granted pursuant to Sections

1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.  Intentional Infliction of Emotion Distress

The amended complaint asserts a New York State claim of intentional infliction of

emotional distress ("IIED") against defendant Doe #2.  Am. Compl. at 25.  In New York, to

state a claim for IIED, a complaint must allege that (1) the defendant's conduct was "extreme

and outrageous," (2) the defendant intended to cause the plaintiff "severe emotional distress,"

(3) a causal connection between the defendant's conduct and the plaintiff's injuries, and (4)

"severe emotional distress."  *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996).

Plaintiff's claim against defendant Doe #2 in this case is based on the allegation that, as a

result of his "denial of medical care, plaintiff suffered, and continues to do so until today,

mental distress, anguish, suffering, disturbance, depression, and suicidal thoughts."  Am.

Compl. at 25.  This is not sufficient to state a cognizable IIED claim.  "New York sets a high threshold for conduct that is 'extreme and outrageous.'"  *Bender*, 78 F.3d at 790.  It has been described by the New York State Court of Appeals as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (1983).  An allegation that defendant Doe #2 deprived plaintiff of his preferred medication to treat carpal tunnel syndrome is not sufficient to satisfy such a strict standard.  *Compare Perri v. Bloomberg*, No. 06-CV-0403, 2007 WL 2891332, at *9 (E.D.N.Y. Sept. 28, 2007) (denying the defendants' motion to dismiss the plaintiff's IIED claim where the amended complaint alleged that the defendants verbally abused him and denied him medical attention when he was asking for treatment by a psychiatrist, experiencing chest pains, and hyperventilating).  Furthermore, the allegations supporting plaintiff's IIED claim fail to plausibly suggest that defendant Doe #2 intended to cause plaintiff severe emotional harm.  As noted above, plaintiff alleges that defendant Doe #2 refused plaintiff certain medication because of plaintiff's history of drug use.  Am. Compl. at 18.  There are no allegations that defendant Doe #2's conduct was motivated by an intention to cause plaintiff emotional harm.

Because plaintiff's amended complaint fails to allege sufficient facts plausibly suggesting that defendant Doe #2's conduct was extreme and outrageous or that defendant Doe #2 acted with any intention to cause harm to plaintiff, plaintiff's IIED claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Failure to Supervise

Liberally construed, plaintiff's amended complaint asserts excessive force, failure to intervene, and spoliation of evidence/access to the courts claims against defendant Woodruff based on his supervisory capacity as the Upstate C.F. Superintendent. Am. Compl. at 22-24. With respect to the spoliation of evidence/access to the courts claim, as discussed above in part II.A.1 of this Decision and Order, the amended complaint fails to plausibly allege sufficient facts to assert a cognizable cause of action, and, for that reason, the claim as asserted against defendant Woodruff in his supervisory capacity also fails. *See, e.g., Moore v. Kwan*, No. 12-CV-4120, 2016 WL 9022575, at *16 (S.D.N.Y. Mar. 30, 2016) ("[I]n the absence of an underlying constitutional violation, a plaintiff cannot state a claim for supervisor liability under Section 1983." (internal quotation marks omitted) (citing cases)).

Turning now to the excessive force and failure to intervene claims, it is well settled that personal involvement is a prerequisite to a claim for damages under Section 1983, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), and "vicarious liability is inapplicable to . . . [Section] 1983 suits." *Iqbal* 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[2] Plaintiff asserts claims against defendant Woodruff based on a theory that he failed to adequately supervise and train defendants Willett and Smith, resulting in the assaults on plaintiff on March 1, 2018. Am. Compl. at 22-24.

With due regard to plaintiff's pro se status, the supervisor liability claims asserted against defendant Woodruff must be dismissed. The amended complaint includes only vague and conclusory allegations that defendant Woodruff was aware of "institutionalized practices of the [DOCCS]" that purportedly resulted in plaintiff being assaulted by defendant Willett. Am. Compl. at 22. The amended complaint fails, however, to further describe the "practices" to which he refers and fails to allege how defendant Woodruff became aware of the practices. The amended complaint further alleges that defendant Woodruff knew of defendant Willett's and Smith's "vicious propensities . . . but took no steps to train them, correct their abuse of authority or to discourage their unlawful use of their positions." *Id.* at 23. This type of vague allegation is not sufficient to plausibly suggest the personal involvement of a supervisor. It does not, for example, describe any of defendant Willett's or Smith's past behavior that reflects a pattern or practice of "vicious" or violent "propensities," nor is it alleged how or when defendant Woodruff learned of such "propensities." In short, the amended complaint contains only vague and conclusory allegations in an attempt to plausibly

---

[2] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). Absent any authority to the contrary, the Court has applied *Colon* in this case.

allege the personal involvement of defendant Woodruff.  Because these types of allegations are not sufficient to support a cognizable Section 1983 claim, the supervisor liability claims asserted against defendant Woodruff are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B.    Plaintiff's PI Motion

Although plaintiff has characterized his motion as one for injunctive relief, *see, e.g.,* PI Mtn. (Dkt. No. 15) at 1-2, his request that the New York State Attorney General be enjoined from representing the defendants in this action is more accurately characterized as a motion to disqualify opposing counsel.  Motions to disqualify counsel "are subject to fairly strict scrutiny" and "the courts must guard against tactical use of motions to disqualify counsel." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).  Generally, courts disqualify counsel "only where an attorney's conduct tends to taint the underlying trial because federal and state disciplinary mechanisms suffice for other ethical violations."  *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (citing *Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

In this case, plaintiff requests the Court disqualify the New York State Attorney General from representing defendants because New York Public Officers Law § 17 prohibits the State of New York from indemnifying a state employee "where the injury or damage [to the plaintiff] resulted from intentional wrongdoing on the part of the employee."  N.Y. Pub. Officers L. § 17(3)(a); *see* PI Mtn. (Dkt. No. 18-3) at 1-2.  Indemnification, however, is a different concept altogether from legal representation, and the New York State Attorney General is obligated to represent a state employee "in a civil action arising out of any alleged act or omission which occurred or is alleged . . . to have occurred while the employee was

14

acting within the scope of his public employment or duties." N.Y. Pub. Officers L. § 17(2)(a).

In any event (and setting aside the fact that there has been no finding that any of the defendants in this action acted intentionally), plaintiff has provided no authority, and the Court has found none, for the proposition that, where the State is alleviated of its duty to indemnify due to an employee's intentional conduct, the New York State Attorney General must be disqualified from representing the employee. Plaintiff's motion otherwise does not cite any grounds for his motion, including any violation of the New York State Rules of Professional Conduct or an existing conflict of interest. Accordingly, because plaintiff has not demonstrated that allowing the New York State Attorney General to continue representing the defendants in this action will taint the underlying litigation, plaintiff's motion is denied.

### C. Plaintiff's Counsel Motion

Also pending before the Court is plaintiff's motion for the appointment of pro bono counsel. Counsel Mtn. Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be considered by the Court when ruling on such a motion. *Hendricks*, 114 F.3d at 392. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. *Id.* (citing *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986). If so, the following should then be considered:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62; *accord, Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). None of the foregoing factors are controlling in a particular case, and each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Hodge*, 802 F.2d at 61).

This action is in its earliest stages. Indeed, this Decision and Order accepts for filing an amended complaint pursuant to Sections 1915 and 1915A – a threshold ruling that expresses no opinion whatsoever on the likely substance of the limited claims that survive initial review. Moreover, none of the defendants have yet answered the amended complaint. On that basis alone plaintiff's motion can, and is, denied.

In addition, in support of plaintiff's motion, plaintiff (1) requests an attorney "who speaks [his] language 'Spanish,'" (2) alleges that he has a learning disability, (3) explains that he is currently taking "psychotropic drugs which muddle his thinking," and (4) alleges he "is being denied access to law library[.]" Counsel Mtn. at 2-3. Despite these challenges, the Court notes that plaintiff has demonstrated no difficulties in litigating this action to date. Indeed, plaintiff has filed several motions with the Court (all written in proficient English) since the commencement of this action and has, in large part, timely complied with the Court's deadlines and Orders. Accordingly, because the Court has no basis upon which to conclude that there are any special reasons compelling the appointment of pro bono counsel at this early juncture of the litigation, plaintiff's motion is denied without prejudice to renewal at a later date.

III.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motions to supplement the amended complaint (Dkt. Nos. 16, 22) are **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall attach to the amended complaint (Dkt. No. 7) plaintiff's first and second supplemental pleadings (Dkt. Nos. 16-1, 22); and it is further

**ORDERED** that plaintiff's amended complaint (Dkt. No. 7) is **ACCEPTED** for filing and is now the operative pleading; and it is further

**ORDERED** that only the following claims survive the Court's initial review of the amended complaint pursuant to Sections 1915 and 1915A: (1) Eighth Amendment excessive force and failure to intervene asserted against defendants Willett and Smith; (2) Fourteenth Amendment equal protection asserted against defendant Willett; and (3) Section 1981 claim asserted against defendant Willett; and it is further

**ORDERED** that, except as to the foregoing, the claims asserted in plaintiff's amended complaint are **DISMISSED without prejudice** pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1); and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE from the docket** defendants Woodruff, Doe #1, and Doe #2; and it is further

**ORDERED** that plaintiff's motion for a preliminary injunction (Dkt. Nos. 15, 18) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for the appointment of counsel (Dkt. No. 17) is **DENIED without prejudice**; and it is further

17

**ORDERED** that a response to the amended complaint shall be filed by defendants Willett and Smith or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions. Motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated:     June 27, 2019
           Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge